UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHARLES MUHAMMAD,

                      Plaintiff,                **MEMORANDUM AND ORDER**

          -against-                     14-CV-926 (SLT)

DEPARTMENT OF NAVY (USN); SECRETARY
JOHN DOE; and YEOMAN JOHN DOE,

                      Defendants.
-----------------------------------------------------------x
CHARLES MUHAMMAD,

                      Plaintiff,

          -against-                     14-CV-1290 (SLT)

DEPARTMENT OF NAVY (USN); and
SECRETARY JOHN DOE,

                      Defendants.
-----------------------------------------------------------x
**TOWNES, United States District Judge:**

    *Pro se* plaintiff Charles Muhammad, who served in the United States Navy in the mid-1940s, brings these two actions against the Department of the Navy and individual defendants with respect to acts which occurred around the time of his separation from the service in July 1946. Plaintiff's requests to proceed *in forma pauperis* ("IFP") are granted for the purpose of this Memorandum and Order but, for the reasons set forth below, the actions are dismissed.

## *BACKGROUND*

    While these may be the first two cases that plaintiff has filed in this district, they are not the first two federal cases that plaintiff has filed. Plaintiff has filed at least 17 cases in the United States District Court for the Southern District of New York ("the SDNY") and at least 9 actions

in the United States District Court for the District of New Jersey—the district in which he resides. Two of the actions brought in the SDNY—*Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP) and *Muhammad v. Dep't of Navy*, 14-CV-835 (LAP)—name both the Department of the Navy and the Secretary of the Navy as defendants. Indeed, the complaint in the latter case, which also names Yeoman John Doe as a defendant, appears to be an exact duplicate of—and to have been filed the same day as—the complaint in *Muhammad v. Dep't of Navy*, 14-CV-926 (SLT), one of the two cases herein.

The two aforementioned SDNY cases and the instant cases all relate to the same series of events, which are briefly summarized here solely to facilitate the reader's understanding of the allegations contained in the complaints at issue. Plaintiff enlisted in the Navy in November 1945. After boot camp, plaintiff was assigned to a ship which was docked in Newport, Rhode Island. Before the ship set sail, however, plaintiff was attacked by an unknown assailant and suffered injuries which allegedly caused him to be hospitalized for two weeks. By the time plaintiff was released from the hospital, the ship had sailed.

In July 1946, plaintiff was discharged from the Navy. In preparing the paperwork relating to plaintiff's discharge, an unnamed Yeoman at the Separation Center in Lido Beach, New York, allegedly minimized the severity of plaintiff's injuries. As a result of this mischaracterization, the Veterans Administration has denied plaintiff certain benefits. The Veterans Administration's decision has been the subject of several other actions, including at least two in the SDNY: *Muhammad v. Bd. of Veterans Appeals*, 11-CV-7059 (DAB), and *Muhammad v. Bd. of Veterans Appeals*, 13-CV-1230 (LAP).

*The Prior Actions*

In March 2011, plaintiff commenced the first of his two SDNY actions against the Navy and the Secretary of the Navy: *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP). Although the action did not name the Veterans Administration as a defendant, the caption of that complaint characterized the action as an "Agency Appeal." The body of the complaint alleged, *inter alia*, that "false records and cover-ups" had deprived plaintiff of benefits to which he was entitled. However, the complaint also contained language which sounded in tort, asserting that "medical malpractice, criminal negligence, fraud" and the falsification of records had resulted in "pain and suffering."

In an unpublished "Order of Dismissal and to Show Cause" dated May 10, 2011, Judge Preska liberally construed plaintiff's action as asserting claims under the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* (the "FTCA"). However, Judge Preska held that these claims were barred by "[t]he *Feres* doctrine of intra-military immunity," which "bars a lawsuit under the FTCA 'for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP), slip. op. at 2 (S.D.N.Y. May 10, 2011) (quoting *Feres v. United States*, 340 U.S. 135, 146 (1950)). In addition, Judge Preska held that, to the extent plaintiff was seeking to recover veterans benefits, the district court lacked subject-matter jurisdiction to review his claims. *Id.* In so ruling, Judge Preska cited to 38 U.S.C. § 511, which grants the Secretary of Veterans Affairs the exclusive authority to "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans," and quoted that portion of § 511 which provides that "the decision of the Secretary as to any such question shall be final and conclusive

and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP), slip. op. at 2.

Judge Preska also noted that plaintiff had filed "numerous complaints" in the SDNY, all of which had been dismissed either as frivolous or for lack of subject-matter jurisdiction. The judge noted that she had previously warned plaintiff that the filing of further duplicative or frivolous cases could result in the entry of an order barring him from filing new actions without prior permission of the Court. *Id.* at 4 (citing *Muhammad v. Burlington Coat Factory*, No. 10-CV-9552 (LAP) (S.D.N.Y. Dec. 23, 2010)). Finding that plaintiff had ignored that warning, Judge Preska ordered plaintiff "to show cause by affirmation why he should not be barred from filing any further actions in this Court *in forma pauperis* ('IFP') without first obtaining permission" from the Court. *Id.* at 4.

Although plaintiff subsequently filed a notice of appeal, plaintiff never responded to the order to show cause. Accordingly, on June 30, 2011, Judge Preska entered a "Bar Order," prohibiting plaintiff "from filing future actions IFP in this Court without first obtaining from the Court leave to file." *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP), slip. op. at 1 (S.D.N.Y. June 30, 2011). Plaintiff's appeal was subsequently dismissed for failure to pay the filing fee.

Since June 30, 2011, plaintiff has attempted to file at least 7 more cases in the SDNY. With the exception of one case which was assigned to Judge Batts, *see Muhammad v. Bd. of Veterans Appeals*, 11-CV-7059 (DAB), all of these cases were assigned to Judge Preska. Neither Judge Preska nor Judge Batts has granted plaintiff permission to file any of the cases.

*The Instant Actions*

On February 7, 2014, when plaintiff filed his most recent complaint in the SDNY—*Muhammad v. Dep't of Navy*, 14-CV-835 (LAP)—he also filed the exact same complaint in this Court, which was docketed as *Muhammad v. Dep't of Navy*, 14-CV-926 (SLT). Although the complaint (hereafter, the "First Complaint") is unclear, it appears to relate to the same set of facts addressed in *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP). The First Complaint states, *inter alia*, that plaintiff was inducted into the Navy in 1945, was attacked while stationed in Rhode Island, and was treated in the Naval Hospital. In addition, this pleading refers to the Navy Yeoman at Lido Beach and his alleged mischaracterization of plaintiff's injuries.

Although the First Complaint consists of a completed form of the sort used to bring employment discrimination claims in the SDNY, it is unclear what claims plaintiff is seeking to raise. On page 1 of the form, plaintiff has checked a box to indicate that he seeks to raise a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff did not check another box on page 1 to indicate that he was suing under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.*, but has checked a box on page 2 to indicate that defendants failed to accommodate some unspecified disability. On page 3, plaintiff indicates that he was subjected to "racial segregation," and discrimination on the basis of race, color and disability, but also states that he was subjected to "malpractice (maltreatment)," and "malfeasance" to "avoid liability." In addition, plaintiff alludes to "Veterans Affairs Malice," even though the caption of the First Complaint names only the Department of the Navy, the Secretary John Doe, and Yeoman John Doe as defendants.

The First Complaint is clear in at least two respects, however. First, the pleading clearly alleges that the discriminatory acts occurred on July 7, 1946, in Lido Beach and are not continuing. Second, the First Complaint clearly requests only two types of relief: "compensation for damages in Navy" and an order "expung[ing] Yeoman's mispresentations of facts," which plaintiff claims are "in dispute with ... medical records" and a "lie." First Complaint at 4.

On February 24, 2014, plaintiff filed a five-page, handwritten document entitled "Notice of Complaint Fraud in the Inducement." That pleading (hereafter, the "Second Complaint") names only the Department of the Navy and Secretary John Doe as defendants and relates primarily to the Yeoman's mischaracterization of plaintiff's injury. Plaintiff alleges, *inter alia*, that the Yeoman "attempted ... to defraud" him by characterizing his injury as a "mere scratch" in the separation paperwork, even though this characterization was inconsistent with the "attending physician's notes" and other medical records. Second Complaint at 1, 3. Plaintiff states that he "has been victimized by this distortion since July 1946, because of the Navy's personnel's ... mischief," and that he has been "cheat[ed] ... of what he has due under ... law ...." *Id.* at 3.

The Second Complaint expressly refers to Judge Preska's decision in *Muhammad v. Dep't of Navy*, 11-CV-1935 (LAP), and to a "Judge Baats"—presumably, Judge Batts, who denied him permission to file in *Muhammad v. Bd. of Veterans Appeals*, 11-CV-7059 (DAB). The Second Complaint tacitly acknowledges that these two judges rendered adverse determinations in actions involving these same facts, but suggests that their decisions were defective for two reasons. First, the pleading suggests that the SDNY was not the proper venue for his action, noting that the events involved in this action took place in "Lido Beach, Long Island, New York," and questioning whether venue was proper in the SDNY. *Id.* at 2. Second,

6

the complaint implies—incorrectly—that the judges credited the Yeoman's misrepresentations, even though they were "hearsay" and not made "under oath." *Id.* at 5.[1] The pleading refers to Judge Preska's and Judge Batts' opinions as "unreasonable decisions supporting the Navy's unreasonable decision that is so obviously wrong there can be [no] difference of opinion among reasonable minds about admitting its erroneous nature." *Id.* at 4.

The Second Complaint does not expressly discuss the basis for jurisdiction. However, citations under the caption of the complaint refer to "18 U.S.C.A. § 286-287" and "31 U.S.C.A. §§ 3729-3733." The complaint does not request any relief.

## *DISCUSSION*

### *Legal Standard*

Title 28, Section 1915(e)(2)(B), of the United States Code requires a district court to dismiss a case if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In addition, federal courts have an independent obligation to examine the basis of their jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

---

[1] As noted above, Judge Preska's decision was based entirely on legal principles, without considering the veracity or accuracy of the Yeoman's representations. Judge Batts' decision merely enforced the "Bar Order" issued by Judge Preska.

106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

## *The First Complaint*

Even construed liberally, plaintiff's complaints fail to state a claim. Plaintiff's First Complaint principally seeks to bring a Title VII claim against the Navy, the Secretary of the Navy, and the Navy Yeoman who prepared the paperwork prior to plaintiff's separation from the service. However, "Title VII does not apply to uniformed members of the armed services." *Spain v. Ball*, 928 F.2d 61, 62 (2d Cir. 1991) (per curiam) (citing *Roper v. Dep't of Army*, 832 F.2d 247, 248 (2d Cir. 1987)). Although the First Complaint alleges very few facts, it states that plaintiff was "[e]nlisted and inducted into Navy" and seeks "[c]ompensation for damages in Navy." First Complaint at 2, 4. Moreover, even if plaintiff were not an enlisted serviceman, but a civilian federal employee, the allegedly discriminatory acts occurred in 1946, long before the effective date of the 1972 amendment which extended Title VII protection to federal employees. "The 1972 amendments to Title VII have no retroactive effect where they create new substantive rights." *Popkin v. N.Y. State Health & Mental Hygiene Facilities Improvement Corp.*, 547 F.2d 18, 20 (2d Cir. 1976).

Although the First Complaint alludes to other claims, none of these claims are viable either. First, by checking a box on page 2 of the First Complaint, plaintiff alleges that defendants

8

somehow failed to "accommodate [his] disability." Even assuming that plaintiff could allege that he was disabled, however, he could not state a claim for disability discrimination because "uniformed members of the armed forces are also barred from bringing claims under the ADA." *Baldwin v. U.S. Army*, 223 F.3d 100, 101 (2d Cir. 2000). Moreover, all of the acts alleged in the First Complaint took place in the 1940s. The ADA did not become effective until July 26, 1992, and is not retroactive. *Smith v. United Parcel Serv.*, 65 F.3d 266, 266 (2d Cir. 1995).

Second, to the extent that the First Complaint's reference to "malpractice, "maltreatment" and misfeasance" constitutes an attempt to allege tort claims, such claims are barred by the *Feres* doctrine. The United States Navy, the Secretary and other Navy personnel have sovereign immunity from suit with respect to acts taken in their official capacities. *See, e.g., Mine Safety Appliances Co. v. Forrestal*, 326 U.S. 371 (1945) (dismissing an action to enjoin the Secretary of the Navy from withholding certain payments because the United States, an indispensable party, had not consented to be sued). The FTCA waives sovereign immunity and permits suits "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). However the FTCA's general waiver of immunity is limited by statutory and judicial exceptions. One of these judicial exceptions is the doctrine of intra-military immunity recognized by the Supreme Court in *Feres v. United States,* 340 U.S. 135 (1950), which prohibits servicemen from bringing lawsuits against the government for injuries that "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146. Since

plaintiff's tort claims would arise from events which occurred during, or were incidental to, his service, they would be barred by the *Feres* doctrine.[2]

*The Second Complaint*

The Second Complaint does not expressly allege a basis for jurisdiction. However, citations under the caption of the complaint refer to "18 U.S.C.A. §§ 286-287" and "31 U.S.C.A. §§ 3729-3733." Accordingly, this Court will first consider whether plaintiff can state a claim under these statutes.

The first two sections cited by plaintiff are criminal statutes. Section 286 provides that "[w]hoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both." Section 287 provides that "[w]hoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title." Even assuming that these statutes apply to this case, they do not provide for private causes of action. *See Dugar v. Coughlin*, 613 F.Supp. 849, 852 n. 1 (S.D.N.Y. 1985) (no private right of action under 18 U.S.C. § 286); *Weber v. Henderson*, No. 00-CV-4029, 2001 WL 34377581, at *5 (E.D. Pa. Dec. 14,

---

[2] Since the First Complaint does not name the Department of Veterans Affairs as a defendant, this Court does not construe the reference to "Veterans Affairs Malice" as an attempt to raise a claim. However, this Court notes that, to the extent that the First Complaint seeks to raise claims relating to his post-service treatment by the Department of Veterans Affairs (formerly, the Veterans Administration), those claims are barred by 38 U.S.C. § 511.

2001) ("18 U.S.C. §§ ... 286 [and] 287 ... are criminal statutes, enforceable only by the United States Department of Justice, and there is no reason to hold that Congress intended for the statutes to include a private right of action for violations of them.")

The other sections cited in the Second Complaint are provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "FCA"). This Act "imposes civil penalties and treble damages on persons who submit false or fraudulent claims for payment to the United States." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, —U.S.—, 131 S. Ct. 1885, 1890 (2011). The FCA authorizes "both civil actions by the Attorney General and private *qui tam* actions to enforce its provisions." *Id.* (citing 38 U.S.C. § 3730). However, to establish liability under the FCA, a plaintiff— whether the Attorney General or a private party—must establish that the defendant "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001).

None of the facts alleged in the Second Complaint suggest that the Yeoman, or any other defendant, sought payment from the government. The Yeoman's allegedly false paperwork related solely to plaintiff's separation from the Navy and did not seek payment of any kind. Indeed, to the extent that the paperwork had any financial ramifications whatsoever, the alleged falsity served to *save* the government money. Accordingly, the Second Complaint does not allege or suggest a viable claim under the FCA.

To the extent that the Second Complaint seeks to raise a common-law fraud claim against one or more of the defendants, this tort claim fails for the same reason that the tort claims raised by the First Complaint failed. As noted above, the FTCA's general waiver of immunity is

11

limited by the doctrine of intra-military immunity, which prohibits members of the armed forces from bringing lawsuits against the government for injuries that "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146. Since the injuries to plaintiff that resulted from the allegedly fraudulent activities of the Yeoman arose out of service, the *Feres* doctrine bars plaintiff from suing over these allegedly tortious acts.

*Leave to Amend*

Because plaintiff's pleadings do not give "any indication that a valid claim might be stated," this Court declines to grant leave to amend either complaint. *See Cuoco,* 222 F.3d at 112; *Gomez,* 171 F.3d at 795. Indeed, even if plaintiff could amend his pleadings to state a claim, those pleadings would be subject to dismissal under the doctrine of *res judicata.* This doctrine provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981). In this case, as plaintiff implies in his Second Complaint, Judge Preska has already ruled on the merits of plaintiff's tort claims against the Navy and the Secretary of the Navy. Accordingly, to the extent that the claims raised in these actions could have been raised in that prior case, such claims would be subject to dismissal under the doctrine of *res judicata.*

In that connection, this Court warns plaintiff that filing multiple duplicative complaints will prove counterproductive. As plaintiff is well aware from his experiences in the SDNY, the repeated filing of frivolous actions can result in the issuance of an order pursuant to 28 U.S.C. § 1651 limiting his ability to file new complaints without prepayment of the filing fee.

## CONCLUSION

For the reasons set forth above, the complaints are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/(SLT)
SANDRA L. TOWNES
United States District Judge

Dated: March 28, 2014
Brooklyn, New York

13